**THOMPSON COBURN LLP**
**LUKAS SOSNICKI, CSB 295895**
**lsosnicki@thompsoncoburn.com**
**10100 Santa Monica Blvd., Suite 500**
**Los Angeles, California 90067**
**Tel: 310.282.2500 / Fax: 310.282.2501**

Attorneys for Defendant HIGHER
EDUCATION LOAN AUTHORITY OF THE
STATE OF MISSOURI

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| MELISSA LOIS WALKER , <br><br> Plaintiff, <br><br> v. <br><br> HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI D/B/A MOHELA, ACTION FINANCIAL, SERVICES, LLC, TRANS UNION, LLC, AND EQUIFAX INFORMATION SERVICES, <br><br> Defendant. | CASE NO. 1:21-cv-00879-DAD-SAB <br><br> The Hon. Dale A. Drozd <br><br> **DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S NOTICE OF NEW AUTHORITY** <br><br> Action Filed:      June 2, 2021 |

Defendant Higher Education Loan Authority of the State of Missouri ("MOHELA")

respectfully submits this notice to inform the Court of new authority relevant to MOHELA's

pending Motion for Judgment on the Pleadings (the "Motion"). [Docket No. 24].

Attached as Exhibit A is a true and correct copy of a June 16, 2022 Memorandum and

Order issued by the United States District Court for the District of Kansas in *Good v. United*

*States Department of Education, et al.*, Case No. 21-cv-2539 -JAR-ADM.  The district court

issued the opinion after briefing on MOHELA's Motion for Judgment on the Pleadings was

complete.

*Good*, like this case, involves allegations of violations of the Fair Credit Reporting Act against MOHELA.  The plaintiff in *Good* alleged that MOHELA inaccurately reported delinquent tradelines on certain of plaintiff's accounts to the credit bureaus and refused to conduct a reasonable re-investigation, failed to consider all information, failed to employ procedures to assure accuracy in credit reporting, and failed to correct the inaccurate information on plaintiff's credit report.  MOHELA moved for judgment on the pleadings based on Eleventh Amendment Immunity.  *See Good v. United States Dept. of Education, et al*., Case No. 21-CV-2539-JAR-ADM at *2, 4-9.  Weighing the four factors applied in *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) and *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250 (10th Cir. 2007), the district court found MOHELA is an arm of the State of Missouri and is therefore entitled to immunity.

DATED:  June 17, 2022                              **THOMPSON COBURN LLP**

By:  _____

**LUKAS SOSNICKI**
Attorneys for HIGHER EDUCATION LOAN
AUTHORITY OF THE STATE OF MISSOURI

# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JEFFREY GOOD, | |
| **Plaintiff,** | |
| **v.** | **Case No. 21-CV-2539-JAR-ADM** |
| UNITED STATES DEPARTMENT OF EDUCATION, et al., | |
| **Defendants.** | |

### MEMORANDUM AND ORDER

Plaintiff Jeffrey Good filed suit against Defendants TransUnion, the United States Department of Education ("USDOE"), and the Higher Education Loan Authority of the State of Missouri ("MOHELA") in the District Court for Johnson County, Kansas on November 1, 2021. Plaintiff brings claims for violations of the Fair Credit Reporting Act ("FCRA").[1]  Pursuant to 28 U.S.C. § 1442, USDOE removed the case on November 19, 2021.

Defendant MOHELA has now filed a Motion for Judgment on the Pleadings (Doc. 16), and Defendant USDOE has filed a Motion to Dismiss (Doc. 18).  MOHELA asserts that it is an arm of the state of Missouri and entitled to Eleventh Amendment immunity.  USDOE contends that the FCRA does not expressly waive the United States' immunity from suit and that it has sovereign immunity.  In addition, USDOE contends that Plaintiff fails to state a claim.  The motions are fully briefed, and the Court is prepared to rule.  For the reasons stated in more detail below, the Court grants both motions.

---

[1] 15 U.S.C. § 1681 *et seq.*

## I.   Factual and Procedural Background

Plaintiff alleges that he discovered errors on his credit reports provided by Experian, Equifax, and TransUnion.  The credit reports inaccurately "reflected two delinquent tradelines simultaneously for the same account, for four different accounts, which dramatically, improperly suppresses Plaintiff's credit score."[2]  On or about April 20, 2020, Plaintiff sent a dispute to each of the three credit bureaus and to MOHELA.  In this correspondence, Plaintiff disputed the accuracy of the reports and requested re-investigation.  Experian and Equifax responded and corrected the issue.  TransUnion responded and failed to correct the issue.  MOHELA responded as a servicer and representative of USDOE and refused to correct the issue.

Plaintiff filed suit in state court.  He asserts three claims under the FCRA—one each against TransUnion, MOHELA, and USDOE.  He contends that Defendants failed to conduct a reasonable re-investigation, failed to consider all information, failed to employ procedures to assure accuracy in credit reporting, and failed to correct the inaccurate information on his credit report.  Pursuant to 15 U.S.C. §§ 1681n and 1681o, he seeks statutory, actual, and punitive damages.  In addition, he seeks costs and attorney's fees.

USDOE removed the case from state court.  MOHELA and USDOE, in separate motions, now request judgment in their favor, primarily asserting that they cannot be held liable due to sovereign immunity.  USDOE also contends that Plaintiff fails to state a claim.

## II.   MOHELA's Motion for Judgment on the Pleadings

### A.   Legal Standard

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  The standard for a motion for

---

[2] Doc. 1-1 at 8 ¶ 32.

judgment on the pleadings under Fed. R. Civ. P. 12(c) is the same as that applied to a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[3]  To obtain judgment on the pleadings, the moving party must demonstrate that the pleadings reveal no material issues of fact to be resolved.[4]  All reasonable inferences from the pleadings are construed in the non-moving party's favor.[5]

If a defendant's motion is "based on an affirmative defense raised in an answer, such as immunity," the motion is "accurately described as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c)."[6]  A motion for judgment on the pleadings may be based on an affirmative defense when the court can take judicial notice of facts.[7]  Statutes are considered legislative facts of which a court can take judicial notice.[8]

### B.    Discussion

MOHELA asserts that it is an arm of the sovereign State of Missouri and is immune from suit under the Eleventh Amendment.  Plaintiff contends that MOHELA is not an arm of the state and not entitled to immunity.  In the alternative, Plaintiff asserts that even if MOHELA is considered an arm of the state, a Missouri statute relating to MOHELA waives sovereign immunity.

---

[3] *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013).

[4] *Cessna Fin. Corp. v. JetSuite, Inc.*, 437 F. Supp. 3d 914, 919 (D. Kan. 2020).

[5] *Id.*

[6] *Ball v. Mayfield*, 566 F. App'x 765, 770 (10th Cir. 2014) (citing *Brown v. Montoya*, 662 F.3d 1152, 1160 n.4 (10th Cir. 2011)).

[7] *See Columbian Fin. Corp. v. Bowman*, 314 F. Supp. 3d 1113, 1132 (D. Kan. 2018).

[8] *United States v. Williams*, 442 F.3d 1259, 1261 (10th Cir. 2006).

1.      **Arm of the State**

Eleventh Amendment immunity extends both to a state and to entities deemed arms of the state, and it bars federal court claims for money damages against covered entities.[9]  "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."[10]  To determine whether an entity acts as an arm of the state, and thus enjoys immunity, the Court must weigh four factors established by the Supreme Court and Tenth Circuit in *Mount Healthy City School District Board of Education v. Doyle*,[11] and *Steadfast Insurance Co. v. Agricultural Insurance Co.*[12]: (1) the character of the defendant under state law; (2) the autonomy of the defendant under state law; (3) the defendant's finances; and (4) whether the defendant is concerned primarily with state or local affairs.[13]  The burden of proof is on Defendant.[14]

---

[9] *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

[10] *Levy v. Kan. Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1168 (10th Cir. 2015) (quoting *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)).

[11] 429 U.S. 274, 280 (1977).

[12] 507 F.3d 1250 (10th Cir. 2007).

[13] *Id.* at 1253; *Mt. Healthy*, 429 U.S. at 280.  Plaintiff contends that there is ambiguity in the Tenth Circuit regarding whether it is a four- or five-factor test in determining whether an entity is an arm of the state.  Plaintiff cites to a 2017 Tenth Circuit opinion that employed a five-factor test.  *See Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017) (citing *Sturdevant v. Paulsen*, 218 F.3d 1160, 1166 (10th Cir. 2000)) (setting forth test as: (1) how the entity is characterized under state law; (2) how much guidance and control does the state exercise over the entity; (3) how much funding does the entity receive from the state; (4) does the entity have the ability to issue bonds and levy taxes; and (5) does the state bear legal liability to pay the judgment against the entity).  Plaintiff also cites to a 2020 Tenth Circuit opinion employing a four-factor test.  *See Couser v. Gay*, 959 F.3d 1018, 1024 (10th Cir. 2020) (citing *Steadfast*, 507 F.3d at 1253) (setting forth test as: (1) the character ascribed to the entity by state law; (2) the autonomy afforded the entity under state law; (3) the entity's finances; and (4) whether the entity is primarily concerned with local or state affairs).  Plaintiff primarily relies on the five-factor test, and MOHELA relies on the four-factor test.
        The Court will employ the four-factor test as it was set forth in the Tenth Circuit's more recent opinion of *Couser*, and in line with, recent decisions from the District of Kansas.  *See Hennessey v. Univ. of Kan. Hosp. Auth.*, No. 21-2231-EFM-TJJ, 2021 WL 6072509, at *2 (D. Kan. Dec. 23, 2021) (citation omitted); *Pino v. Wiedl*, No. 20-2044-JAR-GEB, 2020 WL 3960424, at *3 (D. Kan. July 13, 2020).  Finally, the Court notes that the final three factors of the five-factor test set forth in *Colby* are encompassed in the third factor of the four-factor test this Court applies, so those factors are still considerations.

[14] *See Teichgraeber v. Mem'l Union Corp. of Emporia*, 946 F. Supp. 900, 903 (D. Kan. 1996) (treating Eleventh Amendment immunity as an affirmative defense that must be proven by the party asserting it).

### a.   Character of Defendant

Under this factor, the Court "conduct[s] a formalistic survey of state law to ascertain whether the entity is identified as an agency of the state."[15]  MOHELA was established by Missouri statute,[16] and Missouri statutes establish MOHELA's authority as a "public instrumentality and body corporate."[17]  By statute, MOHELA is specifically "declared to be performing a public function and to be a separate public instrumentality *of* the state."[18]  This statute also declares MOHELA's income and property exempt from Missouri state taxation.[19]  In addition, MOHELA's board members are all designated by the state.[20]  Thus, this factor weighs in favor of finding that MOHELA is an arm of the state.

### b.   Autonomy of Defendant

The second factor considers "the degree of control the state exercises over the entity."[21]  Here, MOHELA's seven-member board is controlled by the state.  The Missouri governor appoints five of the seven MOHELA board members, while the other two board members are designated by statute.[22]  In addition, the governor may remove any board member for "misfeasance, malfeasance, willful neglect of duty, or other cause after notice and a public hearing."[23]  "State authority over the appointment of Commission members lends obvious

---

[15] *Steadfast*, 507 F.3d at 1253 (citing *Sturdevant*, 218 F.3d at 1164, 1166).

[16] MOHELA was established pursuant to the Missouri Higher Education Loan Authority.  *See* Mo. Rev. Stat. §§ 173.350–174.445.

[17] *Id.* § 173.360.

[18] *Id.* § 173.415 (emphasis added); *see also* Mo. Rev. Stat. § 173.360 (stating that MOHELA's authority "shall be deemed to be the performance of an essential public function").  !

[19] *Id*. § 173.415.

[20] *Id.* § 173.360.

[21] *Steadfast*, 507 F.3d at 1253 (citing *Sturdevant*, 218 F.3d at 1162, 1164, 1166).

[22] Mo. Rev. Stat. § 173.360.

[23] *Id.*

support to a finding of sovereignty."[24]  The state also imposes certain restrictions on how

MOHELA can conduct its business, including limitations on investments, limitations on loan

origination, limitations on bond issuances, and required distributions to a fund.[25]  Finally,

Missouri requires MOHELA to have public meetings and provide a yearly report on its income,

expenditures, and indebtedness.[26]

MOHELA, however, is also given some autonomy.  For example, MOHELA may hire its

own employees, adopt bylaws, sue and be sued, enter contracts, and acquire personal property.[27]

In addition, MOHELA operates financially independent from the state in certain situations,

including by issuing its own bonds, setting its own interest rates, collecting fees to pay its costs,

and selling student loan notes.[28]  On balance, the control that the state exercises over MOHELA

through the appointment of the board, limitations on financial expenditures, and requirements for

spending and filing reports weighs slightly in favor of finding that MOHELA is an arm of the

state.

### c.      Defendant's Finances

Under this factor, the Court considers the entity's finances, including how much state

funding it receives and whether the entity can issue bonds and levy taxes.[29]  In addition, the

Court looks at whether a money judgment "is to be satisfied out of the state treasury," focusing

---

[24] *Christy v. Pa. Turnpike Comm'n*, 54 F.3d 1140, 1149 (3d Cir. 1995) (citation omitted).

[25] Mo. Rev. Stat. §§ 173.385.1(13), 173.387, 173.390, 173.392.

[26] *Id.* §§ 173.365, 173.445.

[27] *Id.* §§ 173.370, 173.385.1(2), 173.385.1(3), 173.385.1(11), 173.385.1(14).

[28] *Id.* §§ 173.385.1(6), 173.390, 173.385.1(12), 173.385.1(8).

[29] *Steadfast*, 507 F.3d at 1253; *see also Couser v. Gay*, 959 F.3d 1018, 1029 (citation omitted).

on the legal liability for judgment instead of the practical impact a judgment would have on a state's treasury.[30]

MOHELA concedes that it does not receive any direct funding from the state.  It also notes that it can issue bonds, but it argues that its ability to issue bonds is subject to statutory limitations.  Specifically, Missouri limits the types of bonds that MOHELA may issue.[31]  In addition, MOHELA cannot levy taxes.  "[T]he absence of taxing authority and the ability to issue bonds, with certain state guidance, renders an [entity] more like an arm of the state than a political subdivision."[32]  Furthermore, although MOHELA does not receive direct funds from the state, as one court has noted, MOHELA's "ability to self-fund depends on the authority granted to it by its enabling legislation."[33]  In sum, MOHELA does not receive state funding, can issue bonds (although circumscribed by the state), and cannot levy taxes.  Accordingly, this consideration is neutral to slightly in favor of immunity.

Another consideration under this factor is whether a judgment against MOHELA would be satisfied by the state treasury.  The Tenth Circuit has described this consideration as "particularly important."[34]  Here, MOHELA concedes that a judgment against it would not come directly out of the state's treasury, but that a judgment against it could cause an indirect "functional" liability upon the State of Missouri.  The Court, however, finds this argument to be without merit.  The Tenth Circuit has noted that the "focus [is] on [the] legal liability for a

---

[30] *Sturdevant*, 218 F.3d at 1164 (quoting *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574–75 (10th Cir. 1996)).

[31] Mo. Rev. Stat. § 173.390.

[32] *Steadfast*, 507 F.3d at 1255 (citation omitted).

[33] *Gowens v. Capella Univ., Inc.*, No. 4:19-CV-362-CLM, 2020 WL 10180669, at *3 (N.D. Ala. June 1, 2020).

[34] *Sturdevant*, 218 F.3d at 1164 (citation omitted).

judgment, rather than [the] practical, or indirect, impact a judgment would have on a state's treasury."[35]  Thus, because MOHELA concedes that it would first be responsible for a judgment against it—rather than the state—the Court finds that this consideration weighs against a finding of Eleventh Amendment immunity.

Having considered MOHELA's finances, one consideration is neutral to slightly in favor of Eleventh Amendment immunity, and one consideration weighs against Eleventh Amendment immunity.  Because the consideration of whether the state is responsible for a judgment is an important one, the Court finds that this factor weighs against a finding of Eleventh Amendment immunity.

### d.    State or Local Affairs

As to the fourth factor, the Court considers whether the entity is concerned with local or state affairs, examining "the agency's function, composition, and purpose."[36]  MOHELA was established by Missouri statute

> to assure that all eligible postsecondary students have access to
> student loans that are guaranteed or insured, or both, and in order
> to support the efforts of public colleges and universities to create
> and fund capital projects, and in order to support the Missouri
> technology corporation's ability to work with colleges and
> universities in identifying opportunities for commercializing
> technologies, transferring technologies, and to develop, recruit, and
> retain entities engaged in innovative technologies . . . .[37]

And as previously noted, MOHELA's board is comprised of individuals appointed primarily by the governor of Missouri.  MOHELA's focus is not on local city or county matters but instead on

---

[35] *Id.* (quoting *Duke v. Grady Mun. Schs.*, 127 F.3d 972, 981 (10th Cir. 1997)).

[36] *Steadfast*, 507 F.3d at 1253 (citing *Sturdevant*, 218 F.3d at 1166, 1168–69).

[37] Mo. Rev. Stat. § 173.360.

statewide matters.  Accordingly, this factor weighs in favor of finding that MOHELA is entitled to Eleventh Amendment immunity.

### e.        Balance of Factors

In sum, the first factor as to the character of the defendant, and the fourth factor regarding whether the entity is involved in state or local matters favor a finding that MOHELA is an arm of the state and entitled to Eleventh Amendment immunity.  The second factor regarding MOHELA's autonomy only slightly favors immunity.  The third factor, however, regarding MOHELA's finances weighs against a finding of Eleventh Amendment immunity.  Overall, the Court finds that the factors weigh in favor of finding MOHELA an arm of the State of Missouri.[38]  Accordingly, MOHELA is entitled to Eleventh Amendment immunity as an arm of the State of Missouri.

---

[38] The Court notes that several district court cases from outside the Tenth Circuit have come to different conclusions regarding whether MOHELA is an arm of the state.  Two of the cases engaged in an in-depth analysis.  The Northern District of Alabama, after employing a four-factor test from the Eleventh Circuit, determined that MOHELA was an arm of the state. *Gowens*, 2020 WL 10180669, at *2–4.  Ultimately, the court concluded that "while MOHELA exercises some level of fiscal autonomy, MOHELA is a creature of Missouri state law and the State of Missouri exercises significant control and oversight over MOHELA's leadership, decision-making, and finances," and "thus [it] is an 'arm of the state' of Missouri and is entitled to sovereign immunity under the Eleventh Amendment." *Id.* at *4.

In contrast, the Eastern District of Missouri employed a two-factor test from the Eighth Circuit, finding that MOHELA was not an arm of the state.  *Dykes v. Mo. Higher Educ. Loan Auth.*, No. 4:21-CV-00083-RWS, 2021 WL 3206691, at *2–4 (E.D. Mo. July 29, 2021).  The court found that the first factor weighed slightly in MOHELA's favor due to the state's "significant political and operational control over MOHELA." *Id.* at *3.  However, after considering "whether the state would be legally or functionally liable for a judgment against MOHELA," the court determined that "the second factor weighs against finding that MOHELA is an arm of the state." *Id*. at * 3–4.  The court then concluded that MOHELA was not an arm of the state and not entitled to Eleventh Amendment immunity. *Id.* at *4.

Although neither decision is binding on this Court, the Eleventh Circuit's four-factor test, and utilized in the *Gowens* decision is more like the Tenth Circuit's four-factor test than the Eighth Circuit's two-factor test utilized in the *Dykes* decision.  Thus, the Court finds the *Gowens* decision more instructive when considering whether MOHELA is an arm of the state.

## 2.     Waiver

An exception to Eleventh Amendment immunity occurs when a state consents to suit in federal court.[39]  The test for deciding whether a state has waived its sovereign immunity is a strict one.[40]  Courts will "find waiver only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.'"[41]

Plaintiff contends that the statute providing that MOHELA has the ability "[t]o sue and be sued and to prosecute and defend, at law or in equity, in any court having jurisdiction of the subject matter jurisdiction and of the parties" waives sovereign immunity.[42]  In addition, Plaintiff directs the Court to an unpublished Tenth Circuit decision stating that "[a] sue-and-be-sued provision can constitute a waiver of sovereign immunity."[43]  Yet, the United States Supreme Court has made clear that a state

> does not consent to suit in federal court merely by consenting to suit in the courts of its own creation.  Nor does it consent to suit in federal court merely by stating its intention to "sue and be sued," or even authorizing suits against it "in any court of competent jurisdiction."[44]

Here, the statute does not clearly and explicitly waive Missouri's sovereign immunity.  Although the statute provides that MOHELA can sue and be sued, it also specifically limits suits

---

[39] *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); *Levy v. Kan. Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1169 (10th Cir. 2015).

[40] *Levy*, 789 F.3d at 1169.

[41] *Id.* (quoting *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)).

[42] Mo. Rev. Stat. § 173.385.1(3).

[43] *Doe v. Doe*, 134 F. App'x 229, 230 (10th Cir. 2005) (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Fed. Hous. Admin. v. Burr*, 309 U.S. 242, 245 (1940)). This statement is out of context, and the *Doe* court pointed out that there was no "sue-and-be-sued provision" in the case before it.  *Id.*

[44] *Coll. Sav. Bank*, 527 U.S. at 676 (first citing *Smith v. Reeves,* 178 U.S. 436, 441–45 (1900); then citing *Fla. Dep't. of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n,* 450 U.S. 147, 149–50 (1981) (per curium); and then citing *Kennecott Copper Corp. v. State Tax Comm'n,* 327 U.S. 573, 577–79 (1946)).

to "any court having jurisdiction of the subject matter *and of the parties*."[45]  Because the federal court generally does not have jurisdiction over the state, and the Court has found that MOHELA operates as an arm of the state, the Court cannot find an express waiver of Eleventh Amendment immunity.  Thus, MOHELA is immune from suit in federal court,[46] and MOHELA's motion for judgment on the pleadings is granted.

## III.    USDOE's Motion to Dismiss

USDOE has filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  It contends that it has sovereign immunity from suit because the FCRA does not expressly waive the United States' immunity from suit.  In addition, USDOE contends that Plaintiff fails to state a claim.  The Court need not reach USDOE's 12(b)(6) motion because, as explained below, it finds that USDOE, like MOHELA, is immune from suit.

### A.    Legal Standard

Fed. R. Civ. P. 12(b)(1) provides for dismissal of a claim where the court lacks subject matter jurisdiction.  Federal courts are courts of limited jurisdiction and, as such, must have a statutory or constitutional basis to exercise jurisdiction.[47]  A court lacking jurisdiction must dismiss the claim, regardless of the stage of the proceeding, when it becomes apparent that jurisdiction is lacking.[48]

---

[45] Mo. Rev. Stat. § 173.385.1(3) (emphasis added).

[46] The parties do not address this contention, but the Court notes that this case was removed from state court.  Generally, when a state removes federal claims from state court to federal court, it waives its sovereign immunity defense because it voluntarily invoked the jurisdiction of the federal court.  *See Estes v. Wy. Dep't of Transp.*, 302 F.3d 1200, 1206 (10th Cir. 2002); *Coll. Sav. Bank*, 527 U.S. at 681 n.3.  In this case, USDOE removed the case pursuant to 28 U.S.C. § 1442.  In USDOE's removal petition, there is no indication that MOHELA consented to or joined in the removal.

[47] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

[48] *Penteco Corp. Ltd. P'ship v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991).

A motion to dismiss under Rule 12(b)(1) generally takes one of two forms: either a facial challenge or a factual challenge.[49]  A facial challenge attacks the sufficiency of the allegations in the complaint, while a factual challenge goes beyond the complaint to attack "the facts upon which subject matter jurisdiction is based."[50]  In reviewing a facial challenge, the Court accepts the complaint's allegations as true, whereas in a factual challenge the Court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts."[51]

### B.   Discussion

Under the doctrine of sovereign immunity, the United States "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."[52]

> A party suing the United States, its agencies or officers, must allege both a basis for the court's jurisdiction and a specific statute containing a waiver of the government's immunity from suit.  Any waiver of sovereign immunity must be 'unequivocally expressed in statutory text,' and courts must strictly construe any such waiver in favor of the United States.[53]

Here, the question is whether the FCRA waives the United States' sovereign immunity. The FCRA states that any "person" who is negligent or who willfully fails to comply with the FCRA "with respect to any consumer is liable to that consumer" for a certain amount of damages

---

[49] *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)).

[50] *Id.* (citation omitted).

[51] *Id.* (quoting *Holt*, 46 F.3d at 1003).

[52] *United States v. Testan*, 424 U.S. 392, 399 (1976) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).

[53] *Midwest Crane & Rigging, Inc. v. United States*, No. 10-2137-KHV, 2010 WL 4968274, at *2 (D. Kan. Aug. 6, 2010) (first quoting *Lane v. Pena*, 51 U.S. 187, 192 (1996); then citing *Thomas v. Pierce*, 662 F. Supp. 519, 523 (D. Kan. 1987); and then citing *Shaw v. United States*, 213 F.3d 545, 548 (10th Cir. 2000)).

set forth by the statute.[54]  Under the FCRA, "[t]he term 'person' means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity."[55]  The sovereign immunity issue "centers on the meaning of the word 'person' in § 1681n and § 1681o, specifically whether the federal government is a 'person' for purposes of FCRA's general civil liability provisions."[56]

There are no decisions from the United States Supreme Court, the Tenth Circuit, or the District of Kansas on this issue.  Four circuit courts have decided the issue, and they are evenly split on the issue with the Fourth and Ninth Circuits finding that the FCRA does not expressly waive sovereign immunity,[57] and the District of Columbia and Seventh Circuits holding that the FCRA waives sovereign immunity.[58]

### 1. Circuit Split

The Seventh Circuit first decided the issue in *Bormes v. United States*.[59]  In that case, the United States conceded that it was a "person" under the FCRA's substantive requirements but

---

[54] 15 U.S.C. §§ 1681o(a), 1681n(a).

[55] 15 U.S.C. § 1681a(b).

[56] *Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799, 802 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 1440 (2020).

[57] *Id.*; *Daniel v. Nat'l Park Serv.*, 891 F.3d 762 (9th Cir. 2018).  In 2020, the United States Supreme Court denied certiorari on the *Robinson* case, but two justices dissented noting that because the question had divided the circuit courts of appeals, they would have granted certiorari. *See Robinson*, 140 S. Ct. at 1440–42.  Since the Supreme Court's denial of certiorari, the circuit split has widened with the D.C. Circuit aligning itself with the Seventh Circuit in 2021.

[58] *Mowrer v. U.S. Dep't of Transp.*, 14 F.4th 723 (D.C. Cir. 2021); *Bormes v. United States*, 759 F.3d 793 (7th Cir. 2014).

[59] 759 F.3d 793 (7th Cir. 2014).  The Supreme Court had specifically remanded this case to the Seventh Circuit to decide whether the FCRA waived the United States' sovereign immunity.  *See United States v. Bormes*, 568 U.S. 6, 16 (2012) ("We do not decide here whether FCRA itself waives the Federal Government's immunity to damages actions under § 1681n.  That question is for the Seventh Circuit to consider once this case is transferred to it on remand.").  In the case before the Supreme Court, the question was "whether the Little Tucker Act waives the sovereign immunity of the United States with respect to damages actions for violations of the [FCRA]." *Id.* at 7.  The Supreme Court found that it did not. *Id.* at 8–14.

denied that § 1681n authorized damages against it.[60]  The Seventh Circuit determined that the

statute defined "person" as including any "*government or governmental subdivision or*

*agency*."[61]  It then stated that "[t]he United States is a government.  One would suppose that

[would be] the end of the inquiry.  By authorizing monetary relief against *every* kind of

government, the United States has waived its sovereign immunity. And so we conclude."[62]  The

Seventh Circuit found that the distinction between the substantive and remedial provisions was

unimportant.[63]  Specifically, the court noted that if the United States was a "person" under

§ 1681a(b) for purposes of duties,[64] it also was one for the purpose of remedies or damages under

§ 1681n.[65]  Accordingly, the Seventh Circuit found that "[§] 1681a(b) waives the United States'

immunity from damages for violations of the FCRA."[66]

Four years after the Seventh Circuit's decision, the Ninth Circuit considered the issue and

reached the opposite conclusion.  The Ninth Circuit considered the statute as a whole, noting that

the word "person" was in multiple sections of the FCRA, and finding that "[s]ubstituting the

sovereign for each of the FCRA's iterations of 'person' leads to implausible results."[67]  First, it

found that "treating the United States as a 'person' across the FCRA's enforcement provisions

would subject the United States to criminal penalties."[68]  It found it "highly unlikely that

---

[60] *Bormes*, 759 F.3d at 795.

[61] *Id.* (quoting 15 U.S.C. § 1681a(b)).

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id*. at 797.

[67] *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 770 (9th Cir. 2018).

[68] *Id.* (citing 15 U.S.C. § 1681q, which provides that "[a]ny person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined . . . , imprisoned for not more than 2 years, or both").

Congress intended to" authorize criminal penalties against governments "so obliquely with a broad definition of 'person.'"[69]  In addition, the Ninth Circuit found that permitting the United States' own agencies and state governments to "launch enforcement actions against the United States" made "little sense."[70]

The FCRA also allows punitive damages under § 1681n, and the court noted that Congress rarely "license[s] substantial potential punitive damages against the federal government."[71]  Finally, the Ninth Circuit noted that § 1681u(j) allows for statutory, actual, and punitive damages against any agency or department of the United States for willfully or intentionally disclosing records in violation of the FCRA.[72]  The court found that "[e]quating 'the United States' with a 'person' in multiple sections of the FCRA" conflicts with this "very clear waiver of sovereign immunity [in § 1681u(j)]" and "[b]ecause Congress knew how to explicitly waive sovereign immunity in the FCRA, it could have used that same language when enacting subsequent enforcement provisions."[73]

The Ninth Circuit also found the Seventh Circuit's *Bormes* opinion unpersuasive because the United States conceded it was a "person" in that case, the Seventh Circuit did not consider the imposition of punitive damages against the United States, and the court did not consider the clear waiver of sovereign immunity in § 1681u(j).[74]  Finally, the Ninth Circuit stated that a later

---

[69] *Id*. (citing *Al-Haramain Islamic Found., Inc. v. Obama*, 705 F.3d 845, 854 (9th Cir. 2012)).

[70] *Id*. at 771 (citing 15 U.S.C. § 1681s, which provides that the Federal Trade Commission is authorized to enforce compliance with the FRCA and can bring suit against any person that violates the FCRA).

[71] *Id*. (citing 15 U.S.C. § 1681n) (noting that there is a "presumption against imposition of punitive damages on governmental entities" (citing *Vt. Agency of Nat'l Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 785 (2000))).

[72] *Id.*

[73] *Id*. at 771–72. The court also acknowledged that the inclusion of punitive damages in § 1681u(j) "cuts both ways" because "[i]t demonstrates that Congress was willing to impose punitive damages on the United States in the FCRA." *Id*. at 771 n.6.

[74] *Id*. at 773–74.

Seventh Circuit opinion in which it found that the FCRA did not explicitly waive sovereign immunity for Indian tribes "questioned its own reasoning in *Bormes*."[75]   Accordingly, the Ninth Circuit concluded that it could not "say with 'perfect confidence' that Congress meant to abrogate the federal government's sovereign immunity."[76]

One year later, the Fourth Circuit also determined that the FCRA did not explicitly waive the United States' sovereign immunity.[77]   It first noted the "longstanding interpretive presumption that 'person' does not include the sovereign."[78]   In addition, "statutes waiving sovereign immunity are normally quite clear," and "the words 'United States' appear in a great many waivers."[79]   It concluded that the use of the word "person" was not explicit enough to waive immunity, and the definition section "does not specifically mention the United States or the federal government."[80]   Furthermore, like the Ninth Circuit, the Fourth Circuit found that the explicit waiver of sovereign immunity in § 1681u(j), the bizarre consequences of possible criminal charges brought by the United States against the United States, and the investigation of or imposition of punitive damages against the United States counseled against a finding of sovereign immunity.[81]   The court noted that "the substantive and enforcement provisions in [the] FCRA are not one and the same," and the issues with finding that the United States is a "person" within the statutory scheme all "relate to the statute's enforcement provisions."[82]   Thus, it found

---

[75] *Id.* at 774 (citing *Meyers v. Oneida Tribe of Indians of Wis.*, 836 F.3d 818 (7th Cir. 2016)).

[76] *Id.*

[77] *Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799 (4th Cir. 2019).

[78] *Id.* at 802 (citing *Vt. Agency of Nat'l Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 780 (2000)).

[79] *Id.* at 803 (collecting statutes).

[80] *Id.*

[81] *Id.* at 804–05.

[82] *Id.* at 806.

that "the ordinary meaning of 'person' has always applied to [the] FCRA's enforcement provisions, [and] the statutory definition of 'person' has always applied to [the] FCRA's substantive provisions."[83]  Finally, the Fourth Circuit found that liability imposed against "any government" would expose foreign, tribal, and state governments to liability which Congress surely would not do.[84]  Thus, the circuit found that the district court was correct in dismissing the case for lack of subject matter jurisdiction because the FCRA did not waive the United States' sovereign immunity.[85]

Lastly, in 2021—the most recent circuit decision addressing the issue—the District of Columbia Circuit disagreed with the Ninth and Fourth Circuits and concluded that "the Seventh Circuit correctly held that FCRA waives federal sovereign immunity."[86]  The D.C. Circuit found that the "FCRA defines 'person' to include 'any . . . government'— a term that, as used in a federal statute, surely includes the federal government."[87]  The court did not find a waiver ambiguous and instead noted that for willful violations under § 1681n(a)(1), it "provides one cause of action against '[a]ny person' and [provides] an additional cause of action against any 'natural person.'"[88]  The D.C. Circuit appeared to reason that the inclusion of the word "natural person" in one subsection and the inclusion of the term "person" in another subsection indicated a "calibrated approach" to which persons should bear liabilities and that the FCRA spoke "clearly enough to waive federal sovereign immunity."[89]

---

[83] *Id.*

[84] *Id.* at 805.

[85] *Id.* at 807.

[86] *Mowrer v. U.S. Dep't of Transp.*, 14 F.4th 723, 729 (D.C. Cir. 2021) (citing *Bormes v. United States*, 759 F.3d 793 (7th Cir. 2014)).

[87] *Id.*

[88] *Id.* at 728–29 (citing 15 U.S.C. § 1681n(1)(A)–(B)).

[89] *Id.* at 729.

The court disagreed with the Ninth and Fourth Circuits' conclusion that the express waiver provision in § 1681u(j) meant that Congress did not intend to waive sovereign immunity elsewhere.[90]  The D.C. Circuit noted that

> there is a good reason why [that section] specifically targets federal agencies, as only they may lawfully receive consumer information under it, [and] [t]he fact that [this section] imposes liability only on federal agencies thus says little about whether [the] FCRA's other causes of action cover the United States through broader language encompassing "any . . . government."[91]

The D.C. Circuit also found that several of the consequences of the statute that the Ninth and Fourth Circuit found concerning were "hardly absurd."[92]  As to the imposition of punitive damages, the court noted that "Congress may impose punitive damages on government entities, so long as it does so 'expressly.'"[93]  It concluded that there was "no arguable basis for limiting [the] FCRA's definition of 'person' to substantive but not enforcement provisions; the definition by its terms is 'applicable for the purposes of this subchapter'—i.e., subchapter III, which contains the entire statute."[94]  Thus, the D.C. Circuit found that the FCRA waived sovereign immunity.[95]

After the Fourth Circuit's decision in *Robinson*, but prior to the D.C. Circuit's decision in *Mowrer*, the district court trend appeared to follow the Fourth and Ninth Circuit decisions finding that the FCRA did not waive sovereign immunity.[96]  Since the four-court circuit split,

---

[90] *Id.*

[91] *Id.*

[92] *Id.* at 730.

[93] *Id.* (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 260 n.21 (1981)).

[94] *Id.* at 730 (citing 15 U.S.C. § 1681a(a)).

[95] *Id.*

[96] *See Washington v. U.S. Dep't of Educ.*, No. 5:20-CV-294(MTT), 2021 WL 2593617, at *5 & n.8 (M.D. Ga. June 24, 2021) (siding with the Fourth and Ninth Circuits and determining that "Congress did not clearly and

there have been two decisions from district courts in which the USDOE was specifically a defendant,[97] and these courts engaged in an in-depth analysis of the circuit split.  These two lower courts differed in their rulings, with the Southern District of Ohio finding the Ninth and Fourth Circuits' analysis persuasive and determining that the FCRA did not waive sovereign immunity,[98] and the District of New Jersey following the Seventh and D.C. Circuits' reasoning that the FCRA waived sovereign immunity.[99]

## 2.    Application

In this case, the Court follows the Ninth and Fourth Circuits.  Sovereign immunity "can only be waived by statutory text that is unambiguous and unequivocal."[100]  And, here, the statutory text is not clear in waiving the United States' immunity.  Instead, to find a waiver here, the Court would have to piece different statutory provisions together.  Specifically, the Court would have to rely on language in §§ 1681o and 1681n providing that any "person" who is negligent or any "person" who willfully does not comply with the statute is liable.  Then the Court would look to the term "person," defined in § 1681a(b) to include "government or governmental subdivision or agency."  While construing different statutory provisions together is the method for interpreting statutes,[101] the Court cannot ignore the other statutory provisions in

---

unequivocally waive sovereign immunity in the FCRA" and collecting fourteen district court decisions determining that the FCRA did not waive sovereign immunity).

[97] There have been other decisions addressing the waiver of sovereign immunity under the FCRA since the four-court circuit split.  The Court only notes the two decisions involving USDOE.

[98] *Morgan v. U.S. Dep't of Educ.*, No. 1:20-CV-709, 2022 WL 974339, at *1–6 (S.D. Ohio Mar. 31, 2022).

[99] *Murphy v. Equifax Info. Servs., LLC*, No. 120-CV-09275-RMBAMD, 2021 WL 5578701, at *2–5 (D.N.J. Nov. 30, 2021).

[100] *Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799, 802 (4th Cir. 2019)

[101] *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 290 (2010) ("Courts have a 'duty to construe statutes, not isolated provisions.'") (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 568 (1995)).

the FCRA where substituting the United States as a "person" would lead to absurd results,[102] such as authorizing the Federal Trade Commission in § 1681s(a)(1) to enforce compliance against the United States.

Furthermore, there are limited instances in which Congress waives the United States' sovereign immunity, and when these statutes do it, they "are normally quite clear" and explicitly authorize suit against the United States or provide that the United States will be liable.[103]  For example, "[t]he Little Tucker Act is one statute that unequivocally provides the Federal Government's consent to suit for certain money-damages claims."[104]  This statute "specifically describes claims 'against the United States.'"[105]  In addition, the Federal Tort Claims Act provides that the "[t]he United States shall be liable."[106]  Here, the statutory provision providing for liability does not reference the United States and the Court would instead have to rely on language stating that "any person . . . is liable" to find a waiver of immunity.[107]

Another consideration is that the FCRA clearly waives the United States' immunity in § 1681u(j) by providing that "[a]ny agency or department of the United States obtaining or

---

[102] *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("A court must . . . interpret [a] statute 'as a symmetrical and coherent regulatory scheme' and 'fit, if possible, all parts into a[] harmonious whole.'") (quoting *Gustafson*, 513 U.S. at 569; then quoting *FTC v. Mandel Brothers, Inc.*, 359 U.S. 385, 389 (1959)).

[103] *Robinson*, 917 F.3d at 803 (collecting various statutes providing that the United States is liable).

[104] *United States v. Bormes*, 568 U.S. 6, 16 (2012) (citing *United States v. Mitchell*, 463 U.S. 206, 216 (1983)).

[105] *Robinson*, 917 F.3d at 803 (quoting *Bormes*, 568 U.S. at 7).

[106] 28 U.S.C. § 2674; *see also* the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.*, which includes within the definition of "person" an "instrumentality of the United States," *id.* § 6903(15) and provides in another section that "[t]he United States hereby expressly waives any immunity otherwise applicable to the United States."  *Id.* § 6961(a).

[107] 15 U.S.C. §§ 1681o, 1681n; *see also Stein v. U.S. Dep't of Educ.*, 450 F. Supp. 3d 273, 277–78 (E.D.N.Y. 2020) ("The purported waiver . . . does not contain the words 'United States,' only the word 'person,' which includes in its definition the words 'government or governmental subdivision or agency'.  The lack of specific reference to the United States renders this waiver an impermissible and invalid implied waiver of the government's sovereign immunity." (alteration omitted) (citing 15 U.S.C. § 1681a(b), (n)).

disclosing any consumer reports, records, or information contained therein in violation of this section is liable to the consumer."  Had Congress intended to waive the United States' immunity by including "government" within the definition of "person," there would be no need to include an explicit waiver in this section.   Looking at the statute as a whole, it is not clear that the inclusion of "government" as a "person" waived the United States' sovereign immunity.

Finally, the facts underlying the Fourth Circuit's decision are similar to the facts in the case before this Court.  In *Robinson*, the plaintiff brought suit against several credit reporting agencies, the Pennsylvania Higher Education Assistance Agency, and the USDOE for alleged errors in the plaintiff's credit reports regarding his student loans.[108]  The plaintiff claimed that the USDOE violated the FCRA, specifically § 1681s-2(b), when it failed to properly investigate his complaints and failed to review all relevant information.[109]  The plaintiff brought claims under §§ 1681n and 1681o, and the USDOE "filed a motion to dismiss for want of subject matter jurisdiction based on sovereign immunity."[110]  The Fourth Circuit noted the "confounding problems" with including the United States as a "person" within the statute and stated that "[t]he statute bears no indicia of congressional intent to bring about such a bevy of implausible results, let alone an unambiguous and unequivocal intent to do so."[111]   "To read these broad and staggering implications into the statute on the slimmest of textual hints would be to abjure our duty to construe 'the statutory language with that conservatism which is appropriate in the case of a waiver of sovereign immunity.'"[112]  This Court agrees.

---

[108] *Robinson*, 917 F.3d at 800.

[109] *Id.*

[110] *Id.*

[111] *Id.* at 805.

[112] *Id.* (citing *United States v. Sherwood*, 312 U.S. 584, 590 (1941)).

In sum, the Court concludes that the FCRA does not clearly and explicitly waive the United States' sovereign immunity.  Thus, the Court lacks subject matter jurisdiction and will not address USDOE's alternative argument that Plaintiff fails to state a claim.

**IT IS THEREFORE ORDERED** that Defendant MOHELA's Motion for Judgment on the Pleadings (Doc. 16) is **granted**.

**IT IS FURTHER ORDERED** that Defendant USDOE's Motion to Dismiss (Doc. 18) is **granted**.

**IT IS SO ORDERED.**

Dated: June 16, 2022

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served electronically on June 17, 2022 via ECF attachment to counsel as follows:

Michael F. Cardoza
mike.cardoza@cardozalawcorp.com
Lauren B. Veggian
lauren.veggian@cardozalawcorp.com
The Cardoza Law Corporation
548 Market Street #80594
San Francisco, CA 94104
Tel: 415.488.8041 / Fax: 415.651.9700

Ryan L. McBride
ryan@kazlg.com
2633 E. Indian School Road, Suite 460
Phoenix, AZ 85106
Tel: 800.400.6806 / Fax: 800.520.5523

Alan Gudino
alan@kazlg.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Tel: 619.233.7770 / Fax 800.530.5523

_/s/ Deborah G. Clow_
Deborah G. Clow

1

**CERTIFICATE OF SERVICE**